Filed 1/4/16  P. v. Draper CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRIAN COREY DRAPER, | C078702<br><br>(Super. Ct. No. 14F07063) |

Defendant challenges the trial court's denial of his motion to suppress, contending it erred by admitting evidence discovered by police officers after an unlawful detention and subsequent warrantless search of a vehicle.

We disagree and affirm the judgment.  The officers had a reasonable suspicion to detain defendant, and upon learning that he was on Postrelease Community Supervision (PRCS) pursuant to Penal Code section 3450, they were permitted to execute a probation search based on their reasonable suspicion that defendant exercised at least joint control over the vehicle and its contents.

1

# I. BACKGROUND

A jury found defendant Brian Corey Draper guilty of firearm possession by a convicted felon (Penal Code, § 29800, subd. (a)(1)—count 1), possession of ammunition by a convicted felon (Penal Code, § 30305, subd. (a)(1)—count 2), and possession of more than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (c)—count 3). In bifurcated proceedings without the jury, the trial court found true three prior convictions that formed the basis for a sentence enhancement under Penal Code section 667.5. The trial court sentenced defendant to a total term of six years in prison on counts 1 and 2, and 120 days in county jail on count 3. The court also awarded presentence credit and imposed specified fees and fines.

Prior to trial, defendant moved to suppress the evidence against him pursuant to Penal Code section 1538.5, arguing the evidence was obtained without a warrant. At the suppression hearing, Sergeant Michael Lange of the Sacramento Police Department testified that on the afternoon of October 7, 2014, he and his partner, Police Officer Mark Scurria, were patrolling the Del Paso Heights neighborhood of the North Sacramento area in an unmarked, dark colored Crown Victoria equipped with emergency lights. They drove into a small apartment complex. Sergeant Lange had worked in North Sacramento for at least 14 of his 17 years with the police department, and was familiar with the apartment complex and the fact it was a high-crime area: "It's one of the regular locations that we have issues at regarding gang fights, shootings, stolen cars." The officers drove toward the covered parking stalls at the back of the complex. Sergeant Lange observed a Mercedes parked between two stalls in "the very back far corner of the apartment complex." "It was parked between two different parking stalls, not properly parked in one stall as if you were a resident you would park in a single stall." The vehicle had no license plates.

Defendant was standing about a foot away from the driver's door—"an arm's reach of being able to touch the door"—and two other individuals were standing near the

2

trunk. All of them looked at the approaching officers "almost immediately." Sergeant Lange testified that defendant, in particular, made eye contact and then "ducked down . . . to the side of the vehicle and then [the officers] lost sight of him for a brief moment and then [he] popped right back up." The other two individuals "appeared to be shocked that [the officers] were there and they just kind of started stepping away from the vehicle a little bit."

Meanwhile, defendant "immediately rapidly walked towards the rear of his vehicle" and then around the corner of the parking stall toward the back of the complex, at which point the officers lost sight of him. Officer Scurria followed defendant on foot and radioed Sergeant Lang that defendant was fleeing and had climbed a fence that led to a vacant field. When Officer Scurria returned, Sergeant Lange headed in defendant's direction in their patrol car. Sergeant Lange found defendant coming out of the vacant field and detained him. Defendant told Sergeant Lange his name and that he was on "active PRCS probation for possession of a firearm."[1]

Sergeant Lange returned to the apartment complex and began to retrace defendant's path, "looking for any contraband or anything that would give identification to the vehicle that was in the parking lot." He found a cell phone, and then returned to the Mercedes. From the outside of the vehicle, he saw what he "could clearly tell was a gun box sitting on the front driver's seat." "Gun boxes are very distinctive and there was

---

[1] Defendant filed a request that we take judicial notice of Department of Corrections and Rehabilitation form CDC 1515-CS, entitled "NOTICE AND CONDITIONS OF POST RELEASE COMMUNITY SUPERVISION." We deferred ruling on the request for judicial notice and now deny it, without reaching the merits, on the ground that it is immaterial to our conclusion on appeal because the parties do not dispute that Sergeant Lange was aware of the probation search condition before he conducted the search.

no doubt in [Sergeant Lange's] mind that it was a box to contain a firearm."[2]  At that point, Sergeant Lange opened the door to the vehicle.  He "could smell the strong odor of marijuana emanating from inside."  The gun box contained a stolen .45 caliber semi-automatic handgun and three loaded magazines.  Sergeant Lange also found over 100 grams of marijuana in a backpack in the back seat.  A bill of sale inside the vehicle indicated it was owned by defendant's girlfriend.

"[B]ased on the totality of the circumstances," the trial court found that the officers had conducted a valid detention and search, and denied the motion to suppress. The trial court found there was a reasonable suspicion that defendant was involved in criminal activity under *People v. Souza* (1994) 9 Cal.4th 224 (*Souza*), based on the behavior observed by Sergeant Lange and Officer Scurria and the fact the apartment complex was a high-crime area:

"When they come into this area, they see three men standing around a vehicle, vehicle's not parked right, which might indicate that they don't live in the complex. Maybe they just did a bad parking job, as [defendant's counsel] did state.

"The fact that they all looked up and that one of the individuals quickly walked away from the area, taking that into account with the type of area, with the high crime rate in the area . . . I do not see how an officer would then circle his vehicle and then drive away.

"It seems like this is a type of thing he'd at least stop and ask and make a determination what if anything or if nothing is going on in this area."

---

**2**  Sergeant Lange stated that in his 17 years in law enforcement he could not estimate how many times he had seen a gun case, but that it was more than 50 times.  He also described himself as "one of our department range masters, [and] very familiar with firearms."

The trial court held that the subsequent vehicle search and detention was valid because Sergeant Lange was aware defendant was subject to a probation search condition, and the gun box was in plain view.

## II. DISCUSSION

### A. Standard of Review

" 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' [Citation.]" (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

### B. The Detention

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*Souza, supra,* 9 Cal.4th at p. 231.) "[C]ourts . . . consider 'the totality of the circumstances—the whole picture' to determine whether a particular intrusion by police was justified. Any temporary detention includes factors that, considered together, may suggest either criminal or innocent behavior to trained police officers. No single fact—for instance, flight from approaching police—can be indicative in *all* detention cases of involvement in criminal conduct. Time, locality, lighting conditions, and an area's reputation for criminal activity all give meaning to a particular act of flight, and may or may not suggest to a trained officer that the fleeing person is involved in criminal activity." (*Id*. at p. 239.) Reasonable suspicion is a less demanding standard than probable cause but "requires at least a minimal level of objective justification for making the stop." (*Illinois v. Wardlow* (2000) 528 U.S. 119, 123 [145 L.Ed.2d 570, 576].) Additionally, "the determination of reasonable suspicion must be

based on commonsense judgments and inferences about human behavior." (*Id*. at p. 125.)

Here, the detention was proper because the totality of the circumstances supported a reasonable suspicion defendant was engaged in criminal activity. Defendant was in a high-crime area known for stolen cars, gang activity and shootings, and fled the area after making eye contact with the officers.[3] The combination of these same characteristics was sufficient to support a reasonable suspicion of criminal activity in *Illinois v. Wardlow*. (*Illinois v. Wardlow, supra,* 528 U.S. at p. 124 ["In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police"].)

Defendant is correct that neither of these conditions—a high-crime area or flight from police—are sufficient "standing alone" to support a reasonable suspicion of criminal activity. (*Illinois v. Wardlow, supra,* 528 U.S. at p. 124; *Souza, supra,* 9 Cal.4th at p. 239.) Nonetheless, "[a]n individual's presence in an area of expected criminal activity" and "nervous, evasive behavior" are pertinent factors when coupled with others—particularly when they are present together—as they are in this case. (*Illinois v. Wardlow, supra,* 528 U.S. at p. 124.)

Additionally, defendant and his companions were in the farthest corner of the complex, standing next to a Mercedes that was missing license plates. "It is a matter of common knowledge that automobile thieves often switch license plates from one car to another in order to conceal the identity of the stolen vehicle." (*People v. Galceran*

---

[3] Given defendant's behavior and the fact that the officers were driving a dark colored Crown Victoria equipped with emergency lights, a strong inference from the evidence is that defendant was aware he was being approached by police officers. It is not "just as likely an inference that appellant was seeking to avoid a confrontation with roving members of some gang," as defendant contends. Regardless, the circumstances provided the officers a reasonable suspicion that defendant was fleeing from them because he believed they were law enforcement.

(1960) 178 Cal.App.2d 312, 316.)  Given defendant's presence in a high-crime area and immediate flight when the officers came into view, the officers had reasonable suspicion to detain defendant, even without the missing license plates.**4**  (See *Illinois v. Wardlow, supra,* 528 U.S. at pp. 121, 124 [respondent observed standing next to a building holding an opaque bag in an area known for heavy narcotics trafficking; "[r]espondent looked in the direction of the officers and fled"].)

Defendant argues that his reaction to the police officers was not "flight" and cannot be considered because "there was no basis on which to infer that [his] departure was motivated by fear of being caught in a criminal act."  His narrow definition of "flight" is unpersuasive.  "Flight" in this context can be innocent, but innocent "flight" is still probative:  "[E]ven though a person's *flight* from approaching police officers may stem from an innocent desire to avoid police contact, *flight* from police is a proper consideration—and indeed can be a key factor—in determining whether in a particular case the police have sufficient cause to detain."  (*Souza, supra,* 9 Cal.4th at p. 235, italics added.)  The fact that someone might try to evade the police for innocent reasons does not make it unlawful for officers to stop him and detain him briefly to find out whether grounds exist to investigate further.  This "minimal intrusion" does not offend the Fourth Amendment to the United States Constitution.  (*Illinois v. Wardlow, supra,* 528 U.S. at pp. 125-126.)  "A determination that reasonable suspicion exists . . . need not rule out the

---

**4** Defendant asserts it is "highly dubious" that Sergeant Lange could spot a missing rear license plate from 100 to 150 yards away, and that the trial court "made no finding in this regard and did not rely on this argued factor in sustaining the search."  We are less skeptical.  Sergeant Lange testified that he was "a hundred, maybe a hundred fifty yards" away when he "first noticed" the Mercedes, but that by the time the officers lost sight of defendant they had pulled to "within 20 or 30 feet of the vehicle."  Further, the fact that the license plates were missing was not disputed at the suppression hearing, and thus we cannot say with certainty this was not an implied finding or part of the "totality of the circumstances" relied upon by the trial court to justify the detention.

possibility of innocent conduct." (*U.S. v. Arvizu* (2002) 534 U.S. 266, 277 [151 L.Ed.2d 740, 752].)  Reasonable suspicion can arise from facts that are "suggestive of," but "not necessarily indicative of wrongdoing." (*Illinois v. Wardlow, supra,* at p. 124.)  Here, based on the totality of the circumstances, the officers had a reasonable suspicion to detain defendant.[5]

## C.  The Search

Defendant concedes that he was subject to a search condition that provided that any property under his control could be searched without a warrant by any law enforcement officer.  A search pursuant to a probation search condition, conducted without reasonable suspicion of criminal activity, does not violate the Fourth Amendment so long as the search is not "undertaken for harassment or . . . for arbitrary or capricious reasons." (*People v. Bravo* (1987) 43 Cal.3d 600, 602, 610.)  This is so because a probationer consents to a waiver of his Fourth Amendment rights in order to avoid serving a state prison term. (*Id*. at p. 608.)  " '[W]hen [a] defendant in order to obtain probation specifically agree[s] to permit at any time a warrantless search of his person, car and house, he voluntarily waive[s] whatever claim of privacy he might otherwise have had.' [Citation.]" (*Id*. at p. 607.)  "The officer must reasonably suspect that the object is owned, controlled or possessed by the [probationer] for the search to be valid." (*People v. Boyd* (1990) 224 Cal.App.3d 736, 749.)  When executing a probation search, the searching officers may also look into closed containers that they reasonably believe

---

[5] Defendant notes that Sergeant Lange "never testified as to what specific criminality the men's conduct indicated."  The detaining officer, however, must only "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*Souza, supra,* 9 Cal.4th at p. 231.)

8

are in the complete or joint control of the probationer.  (*People v. Baker* (2008) 164 Cal.App.4th 1152, 1159.)

Defendant argues the officers had no basis for assuming he exercised control over the vehicle, and that "proximity to a vehicle, without more," is insufficient to give rise to an inference of ownership or control over the vehicle.  Again, defendant ignores the totality of the evidence in the record.  Only defendant and his companions were near the vehicle, the vehicle appeared to have been parked only temporarily, and defendant was at the driver's door when the officer's arrived.  On these facts, there was reasonable suspicion that defendant exercised at least joint control over the car and its contents.  And contrary to defendant's suggestion, the officers were not required to ask if the vehicle was owned by defendant prior to searching it.  (*People v. Baker, supra,* 164 Cal.App.4th at p. 1160 ["There is no obligation to ask whether the purse belonged to the parolee before searching it"].)  Accordingly, the officers were permitted to search the vehicle without a warrant.

### III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

RAYE, P. J.

/S/

_____

NICHOLSON, J.

9